# In the United States Court of Federal Claims

| | |
|---|---|
| FREEALLIANCE.COM, LLC, *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> THE UNITED STATES, <br><br> Defendant. | Nos. 24-cv-53, 24-cv-126 <br><br> Filed Under Seal: October 11, 2024 <br><br> Publication: October 18, 2024[1] |

## MEMORANDUM AND ORDER[2]

This case arises out of the United States Department of Defense's Defense Logistics Agency's (DLA or Agency) effort to procure technology services across the DLA IT Enterprise. *See* Complaint, *D&G Support Servs., LLC v. United States*, Case No. 24-126 (ECF No. 1). This is Plaintiff D&G Support Services, LLC's (D&G) second attempt to lodge a bid protest in conjunction with this procurement. Previously, D&G filed a pre-award bid protest after the DLA had rejected its proposal at Phase 1 of the award evaluation process. *See id.* In considering D&G's prior protest, this Court agreed with D&G that the Agency's initial evaluation of its proposal contained several infirmities and accordingly remanded the case to the DLA to reevaluate the

---

[1] This Memorandum and Order was filed under seal, in accordance with the Protective Order entered in this case (ECF No. 10) and was publicly reissued after incorporating all redactions proposed by the parties. (ECF No. 73). The sealed and public versions of this Memorandum and Order are otherwise identical, except for the publication date and this footnote.

[2] Citations throughout this Order reference to the ECF-assigned page numbers, which do not always correspond to the pagination within the document.

proposal. *See* Order, dated Aug. 8, 2024 (ECF No. 55) (Remand Order); Transcript, dated Aug. 8, 2024 (ECF No. 60) (Ruling) at 47:22–49:23. On Remand, the DLA reevaluated D&G's proposal, but despite the reevaluation, D&G's proposal remained ineligible from proceeding to Phase 2 of the evaluation. *See* Plaintiff D&G Support Services, LLC's, Motion for Leave to File an Amended Complaint (ECF No. 65) (Pl. Mot.) at 2–3; *see also* Joint Status Report, dated Aug. 23, 2024 (ECF No. 62) (Post-Remand Report) at 1. Plaintiff has stated its intent to challenge the DLA's reevaluation of its proposal, and accordingly seeks to file an amended complaint in support of its anticipated follow-on protest. Amended Complaint (ECF No. 65-1) (Am. Compl.).

Pending before this Court is Plaintiff's Motion for Leave to File an Amended Complaint. *See* Pl. Mot. D&G seeks to add two new counts (Counts I and II) and to modify two counts alleged in its existing complaint (Counts III and IV). *See* Pl. Mot. at 3; *see generally* Am. Compl. Defendant United States (Defendant or Government) opposes this Motion only with respect to Counts I and II[3] on the grounds that Plaintiff's proposed amendments: (i) were unduly delayed, (ii) would be futile, and (iii) would prejudice Defendant. Def. Resp. at 8–15, 15−18, 18−19.

This Court has considered the parties' briefs, arguments, and applicable law. For the reasons explained below, Plaintiff's Motion for Leave to File an Amended Complaint is **GRANTED**.

## BACKGROUND

**I.    The J6 Enterprise Technology Services Procurement**

Between January 9 and January 31, 2024, D&G and seven other Plaintiffs filed directly-related, pre-award bid protests against the United States regarding the DLA's solicitation to

---

[3] Defendant does not oppose D&G's Motion with respect to Counts III and IV. *See* Defendant's Response to Plaintiff's Motion to Amend Complaint (ECF No. 68) (Def. Resp.) at 7 n.6.

procure technology services across the DLA IT Enterprise.[4]  Consolidation Order at 3.  The Solicitation, known as the J6 Enterprise Technology Services or "JETS" 2.0 procurement, involved two phases.  Administrative Record (AR) at 3663–64, *Harmonia Holdings Grp., LLC, et al. v. United States*, Case No. 24-31 (ECF No. 29).  The Agency first evaluated offerors' Phase 1 submissions.  AR at 3663–64.  Only those receiving an overall rating of "Acceptable" or higher could advance to Phase 2 of the evaluation.  *Id.*  In the process of assigning an overall rating to each proposal, the Agency assigned strengths, weaknesses, and substantial weaknesses to various aspects of each proposal.  *See, e.g.*, *id.* at 37637–40, 37652, 43457–60.  The Agency initially found that each of the eight plaintiffs were ineligible to advance to Phase 2 of the evaluation.  *See* Unopposed Motion for Consolidation at 4, *Harmonia Holdings Grp., LLC et al.*, Case No. 24–31 (ECF No. 20).

## II.     Motion for Judgment on the Administrative Record

During the course of this litigation and after receiving the Administrative Record, six of the eight plaintiffs voluntarily dismissed their cases.  Three plaintiffs did so on their own accord,[5] two plaintiffs voluntarily dismissed after the Agency took corrective action and accepted their proposals for consideration in Phase 2 of the evaluation,[6] and one plaintiff voluntarily dismissed

---

[4] The Court consolidated each of the eight cases, designating *Harmonia Holdings Grp., LLC, et al. v. United States*, Case No. 24–31 (ECF No. 29) as the lead case.  *See* Consolidation Order, dated Feb. 2, 2024 (ECF No. 21) (Consolidation Order) at 3–4.  For reasons stated below, the Clerk of Court subsequently designated *FreeAlliance.com, LLC* as the lead case.  *See* Minute Order, dated Mar. 19, 2024; *infra* at note 6.

[5] Between February 28 and March 4, 2024, Maximus Federal Services, Inc., Storage Strategies, Inc., and Arch Systems, LLC filed respective Notices of Voluntary Dismissal without prejudice.  *See* Notices of Voluntary Dismissal Without Prejudice, *Harmonia Holdings Grp., LLC, et al.,* Case No. 24–31, (ECF Nos. 30, 31, 32).

[6] On March 13, 2024, Defendant notified the Court of its decision to take corrective action regarding Plaintiffs Harmonia Holdings, LLC and RCHP, LLC.  *See* Defendant's Status Report

after the Agency reevaluated its proposal, but still concluded that the plaintiff was ineligible to advance Phase 2.[7]  Only Plaintiffs D&G and Chickasaw Service Solutions, LLC (CSS) remained in the case.  *See* Joint Stipulation of Dismissal of Case No. 24-53 (ECF No. 50).

Subsequently, D&G, CSS, and the Government filed motions for judgment on the administrative record.  *See* Defendant's Cross-Motion for Judgment on the Administrative Record (ECF No. 35) (Defendant's MJAR); CSS's Motion for Judgment on the Administrative Record (ECF No. 27); D&G's Motion for Judgment on the Administrative Record (ECF No. 29) (D&G's MJAR).  On July 23, 2024, this Court conducted oral argument on the three pending MJARs.  *See* Transcript, dated July 23, 2024 (ECF No. 54) (MJAR Hearing Transcript).  Due to the expedited nature of this case, the parties consented to a ruling on the record, which this Court issued on August 8, 2024.  *See* Ruling at 4:22–25; Remand Order.  While the Court granted in part Defendant's MJAR, dismissing two counts of both D&G's[8] and CSS's complaints, the Court also

---

Regarding Corrective Action (ECF No. 35) at 1.  On March 19, 2024, Plaintiffs Harmonia Holdings Group, LLC and RCHP, LLC filed Notices of Voluntary Dismissal without prejudice.  *See* Notices of Voluntary Dismissal Without Prejudice (ECF Nos. 37, 38).  The Clerk of Court subsequently designated *FreeAlliance.com, LLC* as the lead case.  *See* Minute Order, dated Mar. 19, 2024.

[7] On June 4, 2024, Defendant notified the Court of its decision to take corrective action regarding Plaintiff Freealliance.com, LLC (FreeAlliance).  *See* Defendant's Notice of Corrective Action and Motion to Amend Briefing Schedule (ECF No. 40) at 1.  However, after corrective action, FreeAlliance was still unable to move on to Phase 2.  *See* Defendant's Status Report Regarding Corrective Action and Notice Regarding Defendant's Motion to Amend the Administrative Record (ECF No. 45).  Fifteen days later, FreeAlliance voluntarily dismissed its case.  *See* Joint Stipulation of Dismissal of Case No. 24–53 (ECF No. 50).

[8] The Court dismissed Count I and II of D&G's complaint.  *See* Ruling at 48:2–6; Remand Order at 1.  Count I of D&G's complaint alleged that the Agency had applied unstated evaluation criteria because it did not inform offerors that they needed to include an approach in their proposal for each of the lower tier subtasks.  *See D&G Support Services, LLC v. USA Amended Complaint*, Case No. 24–126, Complaint (ECF No. 1) ¶¶65–105; D&G MJAR at 4–7.  Count II of D&G's complaint alleged that the Solicitation was latently ambiguous because, *inter alia*, it failed to put

ruled in favor of CSS and D&G on some of their remaining claims. *See* Ruling at 48:2–6, 8–18. The Court remanded the case to the Agency for reevaluation, holding that two of the alleged infirmities in the Agency's evaluation of D&G's and CSS's proposals required reevaluation by the Agency. *Id.* at 35:9–15. Specifically, the Court found that the Agency: (1) failed to properly document its rationale for differentiating weaknesses and significant weaknesses because the Agency applied the wrong standard under FAR 15.001, and (2) failed to properly document its rationale for assigning D&G and CSS an overall rating of "Marginal." *Id.* at 36:12–19; *see also* Remand Order at 1–2.

## III. Reevaluation of Proposals

On remand, the DLA reevaluated both D&G's and CSS's proposals. *See* Post-Remand Report at 1. D&G's and CSS's overall ratings remained unchanged. Both received a rating of "Marginal" and remained ineligible for consideration in Phase 2. *See* AR at 47837–38, 47869–70.[9]

The Agency assigned D&G the same weaknesses and significant weaknesses in the reevaluation, this time correctly applying the FAR 15.001 standard. *See, e.g.*, AR at 47873–74. The Agency further complied with this Court's Ruling by offering a rationale for assigning D&G an overall rating of "Marginal." *See* AR at 47869–70; *see also* Ruling at 49:2–4; Remand Order at 1–2.

---

offerors on notice that they must address subcomponents of subtasks. *Id.* at ¶¶106–134; D&G MJAR at 7–9.

[9] Defendant moved unopposed to amend the Administrative Record to include the DLA's reevaluation. *See* Defendant's Motion to Amend the Administrative Record (ECF No. 63); *see also* Minute Order granting Defendant's unopposed Motion to Amend the Administrative Record, dated Aug. 29, 2024; Notice of Filing Amendment to the Administrative Record (ECF No. 66-1).

The Government supplied D&G and CSS with the results of the Agency's reevaluation on August 20, 2024.  *See* Post-Remand Report at 1.  D&G informed the Government that it believed further proceedings were necessary and that it would file a motion to amend its complaint.  *Id.*  CSS, on the other hand, decided to dismiss its case, leaving D&G as the sole remaining plaintiff.  *See* Joint Stipulation of Dismissal of Case No. 24-cv-94 (ECF No. 64).

### IV.     Motion for Leave to File an Amended Complaint

On August 30, 2024, just 10 days after receiving the results of the Agency's reevaluation, D&G filed the present Motion for Leave to File an Amended Complaint, attaching its proposed amended complaint to its Motion.  *See* Pl. Mot; Am. Compl.  D&G seeks to add two new counts (Counts I and II) to its complaint and to modify the two remaining counts of its original complaint (Counts III and IV).  *See* Pl. Mot. at 3; *see generally* Am. Compl. ¶¶ 78–96, 97–113, 114–478, 479–489.  Defendant does not oppose D&G's proposed amendments to Counts III and IV.  Def. Resp. at 7 n.6.

In Count I, D&G alleges that the DLA applied an unstated evaluation criterion in its reevaluation.  Am. Compl. ¶¶ 78–96.  Specifically, D&G contends that two sentences in the Agency's reevaluation demonstrate that the Agency applied an unstated evaluation criterion in assigning D&G a "Marginal" overall rating: ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉."  AR at 47870; *see also* Pl. Mot. at 3.  D&G submits that these two sentences reveal that the Agency applied an "unstated standard in evaluating D&G's proposal that demanded strengths to outweigh weaknesses and significant weaknesses."  Am. Compl. ¶¶ 85–91; *see also* Pl. Mot. at 3.

6

Count II of D&G's proposed amended complaint alleges a disparate treatment claim. Am. Compl. ¶¶ 97−113. Specifically, D&G contends that the Agency only applied the alleged unstated criterion described in Count I to D&G's proposal, but not to other offerors' proposals. *See id*.; Pl. Mot. at 3; Plaintiff's Reply to Defendant's Response to Plaintiff's Motion to Amend Complaint (ECF No. 69) (Reply) at 7.

On September 13, 2024, Defendant filed its Response in opposition to D&G's Motion to Amend with respect to Counts I and II of the proposed amended complaint. Def. Resp. at 7 & n.6. Defendant argues this Court should not grant D&G leave to amend Counts I and II because the proposed amendments: (1) were unduly delayed, (2) would be futile, and (3) would prejudice Defendant. *Id.* at 8–15, 15−18, 18−19. On September 20, 2024, D&G filed its Reply in support of its Motion, and accordingly the Motion is now ripe for adjudication. *See* Reply.

## **APPLICABLE LEGAL STANDARDS**

Rule 15 of the Rules of the United States Court of Federal Claims (Rule(s)) permits a party to amend its pleadings "with the opposing party's written consent or the court's leave," and further states that the court should "freely give leave when justice so requires." Rule 15(a)(2). It is well-established that the grant or denial of an opportunity to amend pleadings is "within the discretion of the trial court." *Datascope Corp. v. SMEC, Inc.*, 962 F.2d 1043, 1045 (Fed. Cir. 1992) (citing *Zenith Radio Corp. v. Hazeltine Rsch, Inc.*, 401 U.S. 321, 330 (1971)). A court will ordinarily grant such leave absent "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies . . . , undue prejudice to the opposing party . . . , or futility of amendment[.]" *Mitsui Foods, Inc. v. United States*, 867 F.2d 1401, 1403–04 (Fed. Cir. 1989) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

**DISCUSSION**

As explained below, none of the reasons to deny leave to amend are present here, especially as the proposed amended complaint seeks to address a new decision by the Agency, issued on remand, that excludes D&G from further consideration for the procurement award. *First*, D&G's proposed amended claims are not unduly delayed, because D&G seeks to lodge such claims in response to the Agency's stated rationale in its court-ordered reevaluation of D&G's proposal. Indeed, D&G sought to file its proposed amended complaint within days of receiving the Agency's reevaluation results. *Second*, the proposed amendment would not be futile as D&G's proposed amended claims are plausible. *Finally*, the proposed amendment would not prejudice Defendant as such an amendment will not delay resolution of this case or the procurement as a whole.

**I.       D&G's Proposed Amended Claims are Not Unduly Delayed**

Defendant argues that both Counts I and II of Plaintiff's proposed amended complaint are unduly delayed because they "do not turn on the new. . . text in [the] agency's reevaluation decision" and could have been made based on the original Administrative Record, filed in February 2024. Def. Resp. at 16–17. Plaintiff aptly notes that it could not have lodged these claims any earlier because both counts relate to purported unstated criterion that first appeared in the Agency's reevaluation. Reply at 8–9.

After a review of the record and briefing in this action, it is apparent that D&G did not act with undue delay in moving to amend its complaint. "Although delay itself is an insufficient ground to deny amendment, if the delay is 'undue' [a] court may refuse to permit amendment." *Datascope Corp.*, 962 F.2d at 1045 (quoting *Foman*, 371 U.S. at 182). Delay can be "undue" when the party amending its pleading knew, or should have known, the factual basis for its claim

8

for an extended period before seeking to amend. *See id.* at 1045 (plaintiff's delay in seeking to amend its complaint was undue because plaintiff "was, or should have been, aware" of the factual basis for its claim "long before" it sought to amend). Critical to a finding of undue delay is that the party seeking to amend had prior access to the relevant information that underlies the proposed, new amendment. *See Te-Moak Bands of W. Shoshone Indians of Nevada v. United States*, 948 F.2d 1258, 1263 (Fed. Cir. 1991) (proposed amendment unduly delayed where plaintiffs seeking to amend knew of information foundational to their proposed amendment for eight years before they sought to amend).

In contrast, a party has not unduly delayed if it moved to amend shortly after the facts giving rise to the claim were first capable of being discovered. *See, e.g.*, *Hanover Ins. Co. v. United States*, 134 Fed. Cl. 51, 61 (2017) (holding delay was not undue where the moving party could not have discovered the factual basis of its claim any earlier); *see also Square One Armoring Servs. Co. v. United States*, 152 Fed. Cl. 536, 552 (2021) (citing *Hanover Ins.*, 134 Fed. Cl. at 61) ("[W]here new information is discovered during the course of discovery, courts routinely have permitted amendments even where the moving party had previous general knowledge of the basis of the proposed amendments."). Accordingly, the inquiry turns on whether D&G could or should have known of the facts giving rise to Count I and II of its proposed amended complaint when Defendant filed the original Administrative Record.

### A. Count I

As noted, D&G's proposed Count I alleges that the Agency applied an unstated criterion in its reevaluation of D&G's proposal on remand. *See* Am. Compl. ¶¶ 78–96. Specifically, D&G contends that, in its reevaluation, the Agency required D&G's strengths to outweigh its weaknesses to achieve an overall rating of "Acceptable." *See* Am. Compl. ¶ 91. According to

the proposed amended complaint, this allegation rests on just two sentences that appeared for the first time in the Agency's reevaluation which stated that "███████████████████████████████████████████████████████████████████████████████████████████████████████████" AR at 47870; Am. Compl. ¶¶ 78–96.  D&G argues that because these sentences appeared for the first time in the reevaluation, D&G could not have lodged this unstated criteria claim earlier.  Reply at 8–9.

In response, Defendant first argues that D&G could have challenged the way in which the Agency determined D&G's overall rating after receiving the Agency's initial evaluation because both the initial evaluation and the reevaluation were allegedly conducted in the same way—reviewing each proposal's strengths and weaknesses holistically.  *See* Def. Resp. at 16–17.  Second, Defendant argues that D&G could have brought its challenge earlier because D&G knew before the reevaluation that strengths were an important consideration to an offeror's overall rating.  *See id.* at 17.

D&G is correct that the specific allegation in Count I of its proposed amended complaint could not have been made prior to the Agency's reevaluation because the initial evaluation made no mention of this alleged criterion.  *See* AR at 47838; Ruling at 43:8–9.  The Administrative Record filed in February 2024 is simply devoid of any indication that could be used even to infer that the Agency employed such an alleged unstated evaluation criterion; indeed, the Agency provided no reasoning whatsoever in its original evaluation for D&G's "Marginal" rating.  *See* AR at 37645; Ruling at 42:20–43:1 ("[I]t is evident from the record that the Agency failed to provide any explanation whatsoever for how Plaintiffs' proposals equated to an overall rating of Marginal besides the Agency simply listing the Marginal rating . . . .  The rest of the page is simply blank, without any explanation.").  The sole evidence of this alleged unstated criterion to

10

which D&G points are two sentences that appeared *only* in the reevaluation. *See* Am. Compl. ¶¶ 83–96. Therefore, nothing in the initial evaluation could have alerted D&G to such a rationale. *See Hanover Ins.*, 134 Fed. Cl. at 61; *see also Te-Moak*, 948 F.2d at 1263.

Further, both of Defendant's arguments are unavailing because they mischaracterize D&G's proposed amended claim. *Compare* Def. Resp. at 16–17, *with* Am. Compl. ¶¶ 83–96. According to its proposed amended complaint, D&G specifically claims that upon reevaluation the Agency required D&G's strengths to outweigh its weaknesses to move past Phase 1 and that D&G only learned of that unstated criterion after the reevaluation. *See* Am. Compl. ¶¶ 89–96. Instead of countering this more specific argument, Defendant contends that D&G is wrong on the merits – namely that no unstated evaluation criterion exists – and advances its arguments based on that assumption. However, the merits are not presently at issue[10] and Defendant has failed to demonstrate that D&G could have brought its unstated evaluation claim earlier in the case.

Accordingly, D&G did not unduly delay in asserting Count I of its proposed amended complaint.

**B.      Count II**

In Count II of its proposed amended complaint, D&G alleges that the Agency treated it unequally because the unstated criterion alleged in Count I was applied to D&G, but not to other successful offerors. Am. Compl. ¶¶ 97−113. D&G's proposed amended complaint cites examples of other offerors that it contends were assigned an overall rating of "Acceptable," even though they – like D&G – were purportedly assigned numerous and substantial weaknesses without offsetting strengths. *See id.* D&G claims that these other offerors provide evidence that the

---

[10] The Court notes that it makes no ruling on the merits of the underlying claims. The parties will advance such arguments in their upcoming, respective motions for judgment on the administrative record.

Agency "applied the stated rationale in the reevaluation that there must be strengths to outweigh weaknesses to D&G's proposal alone." Reply at 7.

Defendant argues that D&G's Count II is untimely because D&G could have compared its ratings with other successful offerors with a similar configuration of strengths and weaknesses when Defendants initially filed the Administrative Record. Def. Resp. at 18. However, it is evident from the record that D&G could not have brought this specific claim months ago.

D&G does not simply claim that its proposal contained a similar configuration of strengths and weaknesses to other successful offerors, and thus was treated unequally. If that were true, this Court would likely agree that the claim would be untimely because such information was disclosed in the original Administrative Record. Instead, D&G focuses on the purported unstated criterion used in the Agency's reevaluation as described in its proposed Count I to allege that the Agency applied *that specific* unstated criterion to D&G, but not to other offerors. *See* Am. Compl. ¶ 109 ("The Agency engaged in disparate treatment when it assigned D&G a 'Marginal' overall rating for not having strengths to offset the weaknesses and significant weaknesses but did not hold the numerous other offerors outlined above to the same standard."); Reply at 7 (claiming that an analysis of other offerors "support[s] a claim of disparate treatment because the Agency only applied the stated rationale in the reevaluation that there must be strengths to outweigh weaknesses to D&G's proposal alone"). Both of D&G's proposed Counts I and II are narrow in scope and derive solely from the sentences at issue in the August 2024 reevaluation. As discussed above, such a claim could only have been brought once D&G knew of the alleged unstated criterion, and D&G's proposed amended complaint, supported by the record, notes that it was unaware of this purported unstated criterion until the Agency produced its August 2024 reevaluation. *See supra* Discussion Section I.A. Thus, it was not possible prior to the reevaluation for D&G to earlier raise

this disparate treatment allegation, or the unstated evaluation criteria claim on which it relies. *See* AR at 47870.

Accordingly, as Counts I and II of D&G's proposed amended complaint could not have been alleged prior to the Agency's court-ordered reevaluation of D&G's proposal, Plaintiff did not unduly delay amending its complaint with proposed Counts I and II.

## II. D&G's Proposed Amended Claims are Not Futile

Defendant contends that both Counts I and II of the proposed complaint would be futile because they "find no support in the administrative record." Def. Resp. at 8. D&G responds that both Counts I and II adequately state a claim. Reply at 4.

D&G's proposed amended claims are not futile. "When a party faces the possibility of being denied leave to amend on the ground of futility, that party must demonstrate that its pleading states a claim on which relief could be granted, and it must proffer sufficient facts supporting the amended pleading that the claim could survive a dispositive pretrial motion." *Kemin Foods, L.C. v. Pigmentos Vegetales Del Centro S.A. de C.V.*, 464 F.3d 1339, 1354–55 (Fed. Cir. 2006) (citations omitted).[11] In other words, "for purposes of reviewing [the moving

---

[11] This Court joins other judges on the Courts of Federal Claims in noting that *Kemin Foods* involved a patent dispute heard by the Federal Circuit. *See Smith v. United States*, 120 Fed. Cl. 455, 458 n.4 (2015); *Savantage Fin. Servs., Inc. v. United States*, 119 Fed. Cl. 246, 252 n.3 (2014). When the Federal Circuit decides an issue in a patent case that does not involve patent law, it typically applies the law of the circuit in which the patent case arose. *See Microsoft Corp. v. GeoTag, Inc.*, 817 F.3d 1305, 1310–11 (Fed. Cir. 2016). In *Kemin Foods*, the futility standard was not a patent issue and thus the Federal Circuit applied Eighth Circuit law to determine the standard. 464 F.3d at 1354–55. While such rulings by the Federal Circuit are not binding on this Court because they are not considered to be the law of the Federal Circuit, they can be instructive in nature. *United Med. Supply Co. v. United States*, 77 Fed. Cl. 257, 265 (2007).

Some decisions by other judges on this Court have suggested a more lenient standard applies: an amendment is futile only when a court finds it "facially meritless and frivolous." *St. Paul Fire & Marine Ins. Co. v. United States*, 31 Fed. Cl. 151, 155 (1994) (citing *Alaska v. United States*, 15 Cl. Ct. 276, 280 (1988)); *accord California by & through Yee v. United States*, 145 Fed. Cl. 802,

party's] motion for leave to amend . . . the salient inquiry is not whether [the moving party] is likely to prevail on the merits, but whether the claim added by the amendment would not withstand a motion to dismiss." *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 545 (quoting *LW Constr. of Charleston, LLC v. United States*, 139 Fed. Cl. 254, 284 (2018)). To withstand a motion to dismiss, a plaintiff's proposed claim and supporting factual allegations must at least "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009).

### A.    Count I

As noted, D&G's first proposed count alleges the Agency applied an unstated criterion during its evaluation of D&G's proposal on remand. *See supra* Discussion Section I.A. Defendant contends that D&G's proposed Count I is futile because the Agency did not in fact apply the alleged unstated criterion. *See* Def. Resp. at 11 ("D&G's contention fails because DLA did not require offerors offset weaknesses with strengths to be rated at least Acceptable."); *id.* at 13 ("The administrative record does not support D&G's argument that DLA applied unstated evaluation criteria."). In sum, Defendant makes a merits argument – not a Rule 12(b) argument.

In determining whether D&G's claim is futile, this Court's task is not to assess whether the Agency in fact applied an unstated criterion in giving D&G's proposal a "Marginal" rating. Rather, this Court's inquiry is limited to whether D&G *plausibly* alleged that the Agency applied such an unstated criterion. *See Square One Armoring Servs. Co.,* 152 Fed. Cl. at 545; *Iqbal*, 556 U.S. at 679. "[F]or a plaintiff to succeed on a claim of undisclosed evaluation criteria, it must show that the procuring agency used a 'significantly different basis in evaluating the proposals

---

811–12 (2019); *Katzin v. United States*, 115 Fed. Cl. 618, 622 (2014); *Delpin Aponte v. United States*, 83 Fed. Cl. 80, 91 (2008); *Browder v. United States*, 79 Fed. Cl. 178, 181 (2007). As D&G's proposed amended pleading satisfies the more exacting *Kemin Foods* standard this Court need not choose between the two approaches.

than was disclosed' in the solicitation.'" *Poplar Point RBBR, LLC v. United States*, 147 Fed. Cl. 201, 219 (2020) (alteration in original) (quoting *PlanetSpace, Inc. v. United States*, 92 Fed. Cl. 520, 536–37 (2010)). Here, as noted below, D&G plausibly alleges that the Agency used a significantly different basis in evaluating the proposals than was disclosed in the Solicitation. *See* Am. Compl. ¶¶ 78–96.

Defendant advances merits arguments in support of its position, arguing that the Agency did comply with the correct basis for evaluating proposals as disclosed in the Solicitation and did not apply an unstated criterion. *See* Def. Resp. at 11–13. Specifically, Defendant contends that the Agency evaluated the proposal holistically, favoring strengths and disfavoring weaknesses, before assigning an overall rating. *Id.* Defendant further submits that it did not require offerors to offset weaknesses with strengths to be rated at least "Acceptable." *Id.* That may be true, but the Agency also stated in the reevaluation that "████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████" AR at 47870. Standing alone, these statements can be plausibly read to suggest that the Agency required offerors to offset weaknesses with strengths to be rated at least "Acceptable." If true on the merits, it could reflect that the Agency used a "significantly different basis" in evaluating the proposals than was disclosed in the solicitation, and supporting D&G's contention that it plausibly alleges an unstated criteria claim. *See Poplar Point RBBR, LLC*, 147 Fed. Cl. at 219. To be clear, the Court does not conclude that D&G's proposed claims are meritorious. Indeed, while Defendant's merits arguments may prevail on a motion for judgment on the administrative record (a trial on the papers in this Court), that is not the appropriate standard for determining whether this proposed amended claim can withstand a futility challenge. *See Bannum, Inc. v. United States*, 404 F.3d

1346, 1356 (Fed. Cir. 2005) ("[J]udgment on an administrative record is properly understood as intending to provide for an expedited trial on the record."). The Court merely concludes here that D&G's proposed amended complaint plausibly alleges that Defendant applied an unstated evaluation criterion. Defendant's contention that amending the complaint to include Count I would be futile is therefore unavailing.

B. Count II

To support its argument that Count II is futile, Defendant advances the same merits arguments that it did for Count I. Defendant contends that D&G effectively manufactured the purported unstated evaluation criterion, that D&G's allegation of disparate treatment has no basis in the Administrative Record, and therefore D&G's disparate treatment claim must be rejected as futile. *See* Def. Resp. at 15 ("[T]he evaluation standard D&G purports the agency disparately applied is not 'objective,' but fictional."); *id.* ("Because D&G cannot show DLA inconsistently evaluated offerors according to an objective standard, it's proposed Count II would be futile.").

For a plaintiff to succeed on a disparate treatment claim, it must demonstrate that "the agency inconsistently applied objective solicitation requirements between it and other offerors." *Off. Design Grp. v. United States*, 951 F.3d 1366, 1372 (Fed. Cir. 2020). As stated above, D&G plausibly alleges that the Agency applied an unstated evaluation criterion by requiring D&G to offset weaknesses with strengths to be rated at least "Acceptable." *See supra* Discussion Section II.A. Thus, Defendant's argument that D&G cannot identify an "objective" unstated criterion is unavailing. *See* Def. Resp. at 15.

Additionally, D&G cites to the Administrative Record to support its contention that the Agency treated at least some offerors' proposals differently than D&G's proposal with regard to this purported unstated evaluation criterion. Am. Compl. at ¶¶ 102–08 (citing AR at 38544–57,

38780–93, 39039–50, 39450–62, 40141–54, 40582–95) (select citations omitted).  Specifically, D&G cites proposals by other offerors whose rated strengths did not allegedly outweigh their weaknesses but nonetheless received an overall rating of "Acceptable."  *Id.*  For example, D&G identified a proposal that had ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮  *Id.* at ¶ 103 (citing AR at 38544–57).   At least by this example, D&G plausibly alleges that the "the agency inconsistently applied objective solicitation requirements between it and other offerors" and accordingly D&G's proposed amendment is not futile.  *Off. Design Grp.*, 951 F.3d at 1372.  Today's ruling merely confirms that D&G has made a plausible allegation of disparate treatment in its proposed amended complaint sufficient to defeat a futility challenge.  Again, the Court makes no merits decision here.

**III.     The Proposed Amended Complaint Would Not Prejudice Defendant**

Permitting D&G to file its proposed amended complaint will not prejudice Defendant.  When deciding to grant leave to amend "[o]ne major factor which the trial court should take into account is the possibility of prejudice to the adverse party." *Tenneco Resins, Inc. v. Reeves Bros.*, 752 F.2d 630, 634 (Fed. Cir. 1985).  To successfully assert undue prejudice as a justification for denying leave to amend, "the non-movant must demonstrate that one of the following circumstances will result: severe disadvantage or inability to present facts or evidence; necessity of conducting extensive research shortly before trial due to the introduction of new evidence or legal theories; or excessive delay that is unduly burdensome." *Square One Armoring Servs. Co.*, 152 Fed. Cl. at 549–50 (emphasis omitted) (quoting *St. Paul Fire*, 31 Fed. Cl. at 153 (1994)).

Further, "[m]ere annoyance and inconvenience . . . are insufficient bases to warrant a denial of a motion to amend." *Id.* at 550.

Defendant contends the proposed amendments will cause it prejudice due to "the delay associated with resolving the new matters." Def. Resp. at 19. This argument is unavailing for multiple reasons. *First*, even if this Court did not grant D&G leave to amend its complaint with newly asserted Counts I and II, Defendant does not oppose proceeding with Counts III and IV of D&G's proposed amended complaint. *See* Def. Resp. at 7 n.6. While Defendant hints that this action may take longer to resolve if this Court grants D&G's Motion for Leave to Amend, Defendant provides no reasons for why this must be true. *See* Def. Resp. at 19. To start, Count III of D&G's proposed amended complaint reflects several changes, so additional briefing on this new claim would be necessary regardless of whether the Court grants Plaintiff leave to amend Counts I and II. Further, proposed Counts I and II are not uniquely complicated claims that will slow further proceedings. This Court has faith that both parties can supply quality briefing in a condensed timeframe if necessary.

*Second*, it is unclear that Defendant will suffer any prejudice while this case proceeds. The procurement in this case has two evaluation phases, and Defendant has voluntarily stayed aspects of Phase 2; the current stay is not due to a court-ordered injunction. *See* Defendant's Notice Regarding Remand (ECF No. 56) at 2; Ruling at 45:12–13. Indeed, all parties agreed that a wholistic injunction of the procurement was unnecessary. Ruling at 44:5–7; MJAR Hearing Transcript at 83:14–84:6 (Defendant's indication that it would be unnecessary to stop the whole procurement during reevaluation of D&G's proposal).

Accordingly, as Defendant cannot demonstrate that inclusion of Counts I and II in D&G's proposed amended complaint will prejudice it, there is no basis for this Court to deny D&G leave to amend on this basis as well.

## **CONCLUSION**

For the reasons stated, D&G's Motion for Leave to File an Amended Complaint (ECF No. 65) is **GRANTED**.  D&G shall **FILE** its Amended Complaint by **October 16, 2024**.  The parties are directed to **CONFER** and **FILE** a Notice attaching a proposed public version of this Sealed Memorandum and Order, with any competition-sensitive or otherwise protected information redacted, by **October 18, 2024**.  Additionally, the parties are directed to **CONFER** and **FILE** a Joint Status Report proposing a schedule for future proceedings by **October 18, 2024**.

IT IS SO ORDERED.

*Eleni M. Roumel*
ELENI M. ROUMEL
Judge

October 11, 2024
Washington, D.C.